IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| EDEN E. JOHNSON, M.D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 05-0069-CV-W-ODS |
| | ) |
| R. JAMES NICHOLSON, SECRETARY | ) |
| OF VETERAN AFFAIRS,[1] | ) |
| | ) |
| Defendant. | ) |

ORDER AND OPINION GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pending is Defendant's Motion for Summary Judgment. For the following reasons, the motion (Doc. # 11) is granted.[2]

I. BACKGROUND

Plaintiff, a female of Filipino descent, began working at the Kansas City Veterans Affairs Medical Center ("Medical Center") as a psychiatrist in 1990; prior to that time, she had worked at various other facilities operated by the Veterans Administration ("VA"). In 1983, Plaintiff pleaded no contest to twenty misdemeanor charges in connection with billing discrepancies that occurred over a seventeen month period. A ten year suspension from the Medicare program was imposed commencing in February 1984, but the duration was later reduced to three years and the suspension ended in

---

[1]R. James Nicholson was confirmed as Secretary of Veterans Affairs in January 2005 and sworn into office on February 1, 2005. He therefore replaces Anthony J. Principi as the named defendant in this case. Fed. R. Civ. P. Rule 25(d).

[2]Defendant correctly observes Plaintiff's response does not comply with the requirements of Local Rule 56.1(a); nonetheless, Defendant's request (contained in the Reply Suggestions) that the Court strike Plaintiff's response is denied.

1987. Plaintiff was required to – and did – disclose her criminal history and suspension to the VA every two years as a part of the "recredentialing" process.

On May 8, 2001, Plaintiff was involved in a verbal altercation with Dr. McNelly, a white male psychiatrist. According to Plaintiff's Exhibit 13, the altercation involved something Plaintiff said to one of Dr. McNelly's patients. Plaintiff complained about Dr. McNelly's conduct to, among others, her supervisors, Dr. Cherilyn DeSouza and Dr. Douglas Ambrose. The record does not reflect Plaintiff registered an EEO Complaint at that time, or that she otherwise indicated her belief Dr. McNelly's actions were based on Plaintiff's gender or national origin. Plaintiff considered filing a workers compensation claim, but the Record does not indicate whether she actually did.

Meanwhile, unbeknownst to Plaintiff, Dr. DeSouza was in the process of an investigation involving Plaintiff. On April 23, 2001, the Medical Center received a letter from a patient's friend accusing four staff members – including Plaintiff – of misconduct. In the course of the investigation, Dr. DeSouza interviewed (among others) the patient, who confirmed some of the accusation as to Plaintiff but denied the other three individuals named had engaged in any misconduct. Based on the patient's partial confirmation, Dr. DeSouza recommended that an Administrative Board of Investigation ("AIB") be convened to further investigate the allegations involving Plaintiff.[3] Dr. DeSouza's recommendation was made before the incident involving Dr. McNelly, but was not acted upon until after Plaintiff reported the incident. Plaintiff remained employed, with pay, while the AIB conducted its investigation. On June 5, 2001, Plaintiff filed an EEO Complaint, contending the AIB was convened based on her gender and national origin. The EEO Complaint did not contain any reference to the incident with Dr. McNelly. On June 6, Plaintiff withdrew the complaint. Nobody (other than those in the Equal Employment Office) was aware of the EEO Complaint.

---

[3]Plaintiff contends the AIB also inquired into her intentions to sue Dr. McNelly, but the record citations she provided do not support this assertion. Plaintiff also contends the AIB inquired into the altercation with Dr. McNelly, but this is not surprising given that the patient's complaints and Dr. McNelly's outrage both involved, in part, things Plaintiff said to patients.

2

The AIB's investigation appears to have been cut short by Plaintiff's termination on August 12, 2001 – although Plaintiff was not fired or otherwise disciplined for the transgressions investigated by the AIB. On March 15, 1999 – a date occurring after Plaintiff's last recredentialing – a Memorandum was issued jointly by the Undersecretary for the Veterans Health Administration, the VA Assistant Secretary for Human Resources and Administration, and the VA Assistant Secretary for Financial Management. The Memorandum discussed recent statutory enactments that precluded federal healthcare funds from being paid to anyone included on the Health and Human Service's (HHS) exclusionary list and required that such individuals not be employed. If an excluded individual was already employed, that individual was to be terminated. Prior to the Memorandum's issuance, no such policy existed.

In March or April of 2001, a computerized check of VA employees in Veterans Integrated Service Network 15 (which includes the Medical Center) was conducted, but was later determined not to have been conducted in a manner that would accurately compare current VA employees with the names on the exclusionary list. The computerized check was redone in July 2001, and this time Plaintiff's name was revealed to be on the exclusionary list. On July 12, 2001, Dr. DeSouza recommended Plaintiff's termination because her name appeared on the exclusionary list.[4] As stated earlier, Plaintiff was terminated on August 12. The July 2001 check revealed one other employee was also named on HHS' exclusionary list; this employee was also terminated.

In August 2001, Plaintiff applied to HHS to have her name removed from the exclusionary list. Her request was granted on April 3, 2002. Plaintiff asked to be reinstated, but her request was not acted upon; the Record does not indicate what response (if any) Defendant issued. The Record also does not establish (1) that Plaintiff's removal from the list was sufficient to allow her to be rehired or (2) that Defendant was obligated to rehire her.

---

[4]It is not clear what effect the end of Plaintiff's suspension had on her inclusion on the exclusionary list. In other words, it is not clear whether her listing was correct or a mistake – but Plaintiff does not deny she was on HHS' exclusionary list.

In June 2003, the VA Office of General Counsel revised its guidance for complying with the changes in law and policy and declared people placed on HHS' exclusionary list prior to August 5, 1997, did not have to be terminated. It was further decided that VA employees who had been terminated could be reinstated if they were placed on the exclusionary list prior to August 5, 1997, and this placement was the sole reason for their termination. The revised guidance did not require eligible employees to be rehired; it merely permitted their rehiring. On July 1, 2003, the VA Office of Regional Counsel contacted Plaintiff's lawyer and advised Plaintiff was eligible to be rehired but proposed a "global" resolution of all the outstanding issues between the VA and Plaintiff. Discussions between the parties ensued, but an agreement could not be reached. Plaintiff was nonetheless reinstated effective January 20, 2004, and she resigned shortly thereafter.

## II. DISCUSSION

### A. Summary Judgment Standard

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See generally Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Get Away Club, Inc. v. Coleman, 969 F.2d 664 (8th Cir. 1992). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588-89 (1986); Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985). However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but

. . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### B. Plaintiff's Claims

Plaintiff initiated this lawsuit in January 2005, but her Complaint does not comply with Rule 10(b) and therefore does not clearly identify the claims she wishes to assert. The Complaint alleges "Defendant's stated reasons for the investigation and the termination were pretextual, unreasonable and capricious, discriminatory and retaliatory. . . [I]t was not necessary or required that the Defendant employer terminate her employment . . . and it did so in bad faith." Complaint, ¶ 23. It further alleges "Defendant, in spite of its knowledge of the plaintiff's claims, defenses, its own negligence, its own error, has intentionally refused and failed to make full and fair reinstatement of Plaintiff with full backpay, benefits, damages and attorney fees." Complaint, ¶ 28. The Record does not include Plaintiff's administrative complaint.

Plaintiff's response to Defendant's Motion for Summary Judgment alleges much more than the Complaint. In addition to alleging the AIB's investigation and the termination were a result of her national origin and gender, Plaintiff also seems to assert claims premised on (1) the incident with Dr. McNelly, (2) hostile work environment, and (3) failure to rehire. These three claims are not clearly asserted in the Complaint but will still receive some discussion.

### C. The AIB Investigation

Title VII claims are analyzed under the <u>McDonnell Douglas</u> burden-shifting analysis, which first requires a plaintiff to "establish a prima facie case by showing that [s]he (1) is a member of a protected class, (2) was qualified for his position, and (3) suffered an adverse employment action under circumstances permitting an inference that the action was the result of unlawful discrimination." <u>Johnson v. Ready Mixed Concrete Co.</u>, 424 F.3d 806, 810 (8th Cir. 2005). Once the prima facie case has been

5

satisfied, the burden shifts to the employer to posit a legitimate, non-discriminatory reason for the decision. The burden then returns to the plaintiff, who must then point to evidence demonstrating the employer's explanation is a pretext. E.g., Wallace v. Sparks Health Sys., 415 F.3d 853, 860 (8th Cir. 2005).

As a matter of law, the AIB's investigation was not an adverse employment action; the investigation never concluded, and Plaintiff did not lose pay or benefits while the investigation was conducted. E.g., Singletary v. Missouri Dep't of Corrections, 423 F.3d 886, 891-92 (8th Cir. 2005). In addition, even if being a target of an investigation were adverse employment action, the circumstances do not permit an inference Plaintiff was targeted based on her gender or national origin. The impetus for the investigation occurred before Plaintiff's altercation with Dr. McNelly, and Defendant was certainly entitled (if not obligated) to act on allegations of misconduct on the part of staff members. Plaintiff was treated differently than the other individuals cited in the original correspondence, but she was not similarly situated to them; her situation differed because Dr. DeSouza obtained confirmation of some charges against Plaintiff from the patient in question, but the patient denied the others identified in the letter had done anything wrong. Defendant's decision to investigate the corroborated misconduct does not suggest unlawful discrimination.

## D. Termination

Defendant offered a legitimate, non-discriminatory reason for terminating Plaintiff's employment: her name appeared on HHS' exclusionary list, and statutory and policy changes (made at levels far above the Medical Center) mandated Plaintiff's termination. Plaintiff's attempts to demonstrate pretext are not supported by the Record. She correctly observes Defendant was aware of her suspension when she was recredentialed, but the March 1999 memorandum dictating individuals on the exclusionary list be terminated was issued *after* Plaintiff's last recredentialing. The Record also clearly establishes the search for employees on the exclusionary list was instigated by an official in charge of Integrated Service Network 15 and was not

6

instigated by anyone at the Medical Center.  One other employee was found to be on the exclusionary list, and this employee was fired as well.  Plaintiff has not identified a person who was named on the exclusionary list and was not fired after the July 2001 computer check.

Plaintiff contends the decision to conduct the second computer check is evidence of pretext, and relies on testimony indicating the second computer check was conducted because the first one did not identify Plaintiff as being on HHS' exclusionary list.  There are several problems with this argument.  First, there is no denying Plaintiff was on the exclusionary list.  Second, Plaintiff contends Defendant knew she was on the exclusionary list; thus, when confronted with a computer check of people who were on the exclusionary list that failed to reveal Plaintiff's name, Defendant had a valid reason to suspect something was wrong with the search itself.  Third, the original computer search was found to have been programmed incorrectly; instituting a correctly programmed search is not evidence of retaliatory motive.  Fourth, the entire search for employees included on the list was instigated by officials outside the Medical Center.

### E.  Reinstatement

Plaintiff complains Defendant's failure to reinstate her earlier than January 2004 was unfair and negligent, but she provides no explanation as to how it was related to Plaintiff's gender or national origin.  In her response to the Motion for Summary Judgment, Plaintiff implies the decision was a retaliatory response to her EEO Complaint and supports this implication by pointing to the course of negotiations between the parties.  There is definitely a connection between Plaintiff's protected activity and the parties' negotiations, but it is not an *improper* connection.  Communications between lawyers on behalf of employers and employees endeavoring to resolve a civil rights complaint are not evidence of retaliation.

### F. The Incident With Doctor McNelly

There are a multitude of problems with Plaintiff's complaints regarding Dr. McNelly, but the Court will focus on the most basic. Nothing in the record or in Plaintiff's arguments suggests Dr. McNelly's actions were based on Plaintiff's gender or national origin. Plaintiff has described Dr. McNelly as being angry over something she did and, at best, has alleged he acted unprofessionally or rudely. Plaintiff has not described discriminatory treatment.

Plaintiff may also be contending Defendant's handling of her complaint about Dr. McNelly's conduct violated Title VII, but this argument fails as well. Plaintiff has alleged dissatisfaction with Defendant's response, but has not demonstrated any basis for a jury to find Plaintiff was subjected to an adverse employment action based on her gender or national origin. The Record also clearly establishes her termination and the AIB investigation were unrelated to her encounter with and complaint about Dr. McNelly.

### G. Hostile Work Environment

Plaintiff's hostile work environment claim (assuming she is attempting to assert one) fails for at least four reasons. First, as indicated earlier, the Complaint does not assert this claim. Second, many of Plaintiff's allegations are not supported by the portions of the Record she has cited. Third, even if Plaintiff's allegations were supported, they demonstrate conduct involving other people that she did not experience or witness. E.g., Kline v. City of Kansas City, 175 F.3d 660, 668 (8th Cir. 1999), cert. denied, 528 U.S. 1155 (2000). Fourth, nothing Plaintiff has alleged demonstrates her own workplace was permeated by discriminatory intimidation and insults that were sufficiently severe to alter the terms and conditions of her own employment, e.g., Al-Zubaidy v. TEK Indus., Inc., 406 F.3d 1030, 1038-39 (8th Cir. 2005), or that she was targeted for this treatment based on her gender or national origin. E.g., Pedroza v. Cintras Corp. No. 2, 397 F.3d 1063, 1068 (8th Cir. 2005).

8

## III. CONCLUSION

The Record reveals no relevant factual disputes requiring resolution by a jury, and the undisputed facts demonstrate Defendant's entitlement to judgment as a matter of law. Summary judgment is granted to Defendant.

IT IS SO ORDERED.

                                                  /s/ Ortrie D. Smith
                                                  ORTRIE D. SMITH, JUDGE
DATE: August 23, 2006                UNITED STATES DISTRICT COURT